In the Matter of Elwood F. WILLIS, individually and trading as The Kosher Irishman, and Stella B. Willis, Bankrupts.

No. B-522-58.

United States District Court
D. New Jersey.
June 10, 1959.

Max J. Mareiniss, Newark, N. J., for Daniel F. DeLear, trustee.

Elmer O. Goodwin, Newark, N. J., for Nat. Newark and Essex Banking Co., claimant.

WORTENDYKE, District Judge.

National Newark and Essex Banking Company (Bank) has petitioned this Court to review an order dated March 2, 1959 made by the Honorable William H. Tallyn, Referee in Bankruptcy, adjudging that a certain conditional sales agreement dated August 23, 1956, held by the Bank, covering a 1956 Chevrolet station wagon automobile to be null and void and discharging from the proceeds of sale of that automobile the lien claimed by the Bank upon its conditional sales agreement.

Pursuant to the Bank's petition the Referee duly filed his Certificate of Review embodying his findings of fact and conclusions of law which have been considered by this Court, together with the documents referred to therein. The factual basis underlying the Referee's conclusions will be found in the following summary:

The automobile in question was a new vehicle certified by the manufacturer as having been transferred on July 18, 1956 to H. O. B. Motors, Inc. of Plainfield, New Jersey, and the first assignment of that statement of origin, apparently undated, was to "Wilmot Holding Co. Inc." subject to a lien in favor of Franklin Washington Trust Company of Newark, New Jersey, the predecessor in interest of the Bank.

The Bank's claim is upon a written auto conditional sales contract dated August 23, 1956, reciting the purchase of the vehicle by "Wilmot Holding Co. Inc." from H. O. B. Motors, and providing for the payment by the purchaser of a balance of $2,327.36 in thirty-six equal consecutive monthly installments, and further providing that title to the vehicle remained in the vendor until the full purchase price had been paid.

The document contemplated its assignment by H. O. B. Motors to Franklin

Washington Trust Company, and the purchaser of the vehicle agreed to make the installment payments to the assignee. The present Bank is the successor of that assignee.

The conditional sales agreement purports to have been signed in the name of the purchaser as follows: "Wilmot Holding Co. Inc. E. F. Willis, Pres."

On even date with the conditional sales contract, the Division of Motor Vehicles of the Department of Law and Public Safety of the State of New Jersey issued a Certificate of Ownership of the vehicle, as prescribed by applicable State law, in which it is certified that the owner of the vehicle was "E. F. Willis T. A. Wilmot Holding Co. Inc." and that an encumbrance upon said vehicle was held by Franklin Washington Trust Company, concededly the assignee of the conditional sales contract.

The parties also concede that "Wilmot Holding Co. Inc." was not a corporation upon any of the dates stated, but that a New Jersey corporation did exist on those dates, the name of which was "Wilmit Holding Corporation," of which the captioned bankrupt, Elwood F. Willis, was president.

On October 9, 1956 Cambridge Mutual Fire Insurance Company issued to "Wilmit Holding Corporation" an insurance policy covering the automobile in question, and reciting that any loss thereunder was payable "as interest may appear" to the named insured and Franklin Washington Trust Company.

The Trustee in Bankruptcy obtained from the Referee an order calling upon the Bank to show cause why the conditional sales contract should not be declared null and void and discharging the proceeds realized from the sale of the automobile from the lien claimed by the Bank. Upon the return of this order to show cause, the Trustee contended, and contends now before this Court, that the ownership of the automobile is disclosed in the Certificate of Ownership issued by the New Jersey Division of Motor Vehicles, and that title thereto was vested in the bankrupt, Elwood F. Willis, individ-

ually, thereby constituting the vehicle an asset of the bankrupt estate. The Trustee further argued that the conditional sales contract was ineffective to impose a lien upon the vehicle because it was executed not by Elwood F. Willis, individually, but by Wilmot Holding Co. Inc., E. F. Willis, Pres. In short, the Trustee contends that the claimed lien was created by the act of a party not the owner of the vehicle, and, therefore, that the Trustee's interest in the automobile is paramount to and unaffected by the asserted lien. In support of this contention the Trustee relies upon section 70, sub. c, of the Bankruptcy Act (11 U.S.C.A. § 110, sub. c), which vests in the Trustee "all the rights, remedies, and powers of a creditor then (on the date of the bankruptcy) holding a lien" upon all property of the bankrupt upon which a creditor could have obtained a lien by legal or equitable proceedings on said date.

In his Certificate of Review, the Referee found the following facts:

Elwood F. Willis acquired title to the automobile from H. O. B. Motors in the guise of president of a fictitious corporation, to wit, Wilmot Holding Co. Inc.; and that in a similar capacity, Willis executed the conditional sales contract to the seller which retained title to the vehicle to secure the unpaid balance of the purchase price, which was advanced to the seller by the Bank's predecessor under an assignment of the conditional sales agreement. Upon the making of this advancement by the Bank's predecessor, the title was registered with the New Jersey Division of Motor Vehicles as vested in Willis, trading as Wilmot Holding Co. Inc.

Despite these findings of ownership in Willis, individually, the insurance policy above referred to was thereafter issued to cover this automobile to an existing corporation,—Wilmit Holding Corporation, and contained therein a recital of the interest or lien of the Bank's predecessor.

Upon these findings, the Referee concludes that the Trustee in Bankruptcy acquired the interest of the bankrupt

Willis in the automobile "because the Certificate of Ownership is in the name of the bankrupt as an individual." Because, however, the Referee concludes that the conditional sales contract was executed by a corporation, he held that the Trustee, as a lien creditor, was unaffected by the lien in favor of the assignee of the conditional sales contract.

I am unable to agree with the reasoning of the Referee in this regard. If, as the Referee finds, the bankrupt Willis acquired title to the automobile because of the nonexistence of "Wilmot Holding Co. Inc.", the execution by Willis of the conditional sales agreement as ostensible president of this same non-existent corporation has the same effect, in my opinion, as if the latter document were executed by Willis, individually. As the Referee himself concludes "The Certificate of Ownership does give the required statutory notice of a contract or encumbrance held by the Bank and the rights of the Trustee would have been inferior to those of the Bank if the Bank had been able to produce a contract or encumbrance executed by the bankrupt as an individual."

I find that the contract of encumbrance *was* executed by the bankrupt as an individual. Moreover, the existence of the encumbrance is not only recited in the Certificate of Ownership issued by the Division of Motor Vehicles, but also appears in the insurance policy covering the automobile and in the "First Assignment" of the "Manufacturer's Statement of Origin" which evidenced the transfer of the vehicle to the title-retaining vendor named in the conditional sales contract. It is not disputed that the purchase of the automobile by Willis was made possible by the advancement made by the Bank's predecessor and it is equally beyond question that the conditional sales contract was executed by *Willis*.

I am impelled to the conclusion that the creation of the claimed lien was effected by Willis individually, to the same extent and with similar effect as though no corporate name had been recited therein. The use of a fictitious name in conjunction with that of the bankrupt must produce a similar consequence, upon the conditional sale agreement, as upon the document evidencing his acquisition of title.

The Referee's order of March 2, 1959 declaring the conditional sales agreement null and void and discharging the proceeds of sale of the automobile from the lien of the conditional sales agreement is reversed.

An appropriate order may be presented.